# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **2:10cr16** |
| | ) | **Electronic Filing** |
| OLAJIDE USMAN ABDUL-GANUI | ) | |
| | ) | |

## OPINION

On February 2, 2010, a grand jury returned a four-count indictment against Olajide Usman Abdul-Ganui ("defendant") charging him with (1) conspiring to possess with intent to distribute 100 grams or more of heroin, from on or about December 2009 to on or about January 6, 2010, in violation of 21 U.S.C. § 846; (2) possessing with intent to distribute 100 grams or more of heroin, on or about January 6, 2010, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(i); (3) smuggling goods into the United States, on or about January 6, 2010, in violation of 18 U.S.C. § 545; and (4) importing a controlled substance into the United States, from on or about December 2009 to on or about January 6, 2010, in violation of 21 U.S.C. §§ 952(a) and 960(b)(2)(A).[1]  Presently before the court is defendant's Motion to Suppress Evidence.  For the reasons set forth below, defendant's motion will be denied.

On January 5, 2010,  an Immigration and Customs Enforcement ("ICE") agent applied for a warrant to search and install a Global Positioning System beeper inside a package containing heroin to be delivered to 2655 Brighton Road, Apt. 3, Pittsburgh, PA 15212.  The application was supported by an affidavit and the warrant was issued at approximately 8:50 a.m. that same day.  On January 6, 2010, at approximately 9:58 a.m., an undercover United States

---

[1] Defendant's Motion to Dismiss Count Three was granted in accordance with the government's indication at the September 17, 2010, suppression hearing that it had no opposition to the motion.

Postal Inspection Service ("USPIS") inspector conducted a controlled delivery of the package. Defendant answered the door, signed for and took receipt of the package. At approximately 10:01 a.m., the electronic beeper inside the package was activated, indicating the package had been opened. At 10:03 a.m., officers entered the Brighton Road residence. Upon entry, they found defendant in the kitchen holding the contents of the package - a plastic bag containing heroin. No one else was at the residence. Defendant provided the officers with basic information, such as his name, date of birth, social security number, Pennsylvania driver's license number and telephone number. He identified himself as a Nigerian-born citizen and a resident alien of the United States. He explained that he first entered the United States in 2001 on a business visa and had been living at the Brighton Road residence with his girlfriend for the last six months. When asked where his resident alien identification card, passport and visa were, defendant indicated his identification card was in his brother's possession because he had given it to him for safekeeping after experiencing some domestic issues with his ex-wife. Defendant stated his brother is a truck driver and was out on the road. When asked if he understood English, defendant replied in the affirmative and said that it is the national language of Nigeria and he had gone to a Nigerian high school. Defendant advised that he was in the business of selling used cars. When asked what car he currently was driving, he replied that he was driving a rental vehicle which was parked behind the residence. Defendant gave the officers permission to conduct a search of the rental car and signed an ICE Consent to Search form.

Defendant was read his Miranda rights at approximately 10:30 a.m., and stated he understood his rights. When asked about the package he had just received, defendant became visibly nervous, told the officers he did not violate the law, and claimed he ordered clothes from India. Defendant admitted that the package was for him, but said he had ordered the clothing as

a late Christmas gift for another person.  When asked who the clothes were for, defendant replied that he did not know, but that he would give them to some of his Jitney customers.  When asked how the clothes had been ordered, defendant said he called a 1-800 number.  Although he did not know the exact number, he told the officers that he thought it might be in his journal which was located in his rental vehicle.  Defendant indicated he had traveled to several countries including India, China, Japan, England, and the United States.  He also said he was in India when he was young.  Defendant  explained that 2002 was the last time he entered the United States and that he had met and married a United States citizen, and lived with her in the East Liberty section of Pittsburgh for five to six years.  When asked if he had previously received any packages from India, defendant first stated that he had, but later said that this was his first package from India.  He claimed he had received other packages from China that contained clothing which he purchased for resale in the United States.  He also used a 1-800 number to purchase the clothing from China and paid for it through Western Union.  Defendant also told the officers he wears the clothing and sells it to his jitney customers.

When shown a piece of mail bearing his name and the address of 514 W. North Avenue, Apt. 4, Pittsburgh, PA 15212, defendant claimed his brother lived at that address.  When asked if his identification card and passport were there, defendant said they were.  Defendant was asked if he would allow the officers to accompany him to that residence to retrieve his documents.  He declined, stating that he wanted to call his brother because he did not want the officers to go into his brother's residence and anger him.

Upon the officers' arrival at the North Avenue apartment, they observed that the front door showed signs of forced entry.  They received no response after knocking on the door.  They met with a rental agent from Candey Management Corporation, defendant's landlord, who

informed them that the apartment was a small one-room efficiency and defendant's name was the only one on the lease. The landlord also stated that defendant had previously told the agency that he keeps the apartment as an office and lets his brother stay there from time to time. The officers also interviewed the letter carrier to the North Avenue apartment, who indicated that defendant was the only person who received mail at that address.

On January 6, 2010, ICE Special Agent Martin Ryan ("Special Agent Ryan") applied for a search warrant for 514 W. North Avenue, Apt. 4, and attached an affidavit in support thereof. The application informed the issuing magistrate that the apartment was believed to contain controlled substances and evidence of three types of crimes: (1) controlled substance crimes, specifically 21 U.S.C. §§ 841(a)(1), 843(b) and 846; (2) failure to carry alien registration paperwork, in violation of 8 U.S.C. § 1304(e); and (3) providing false facts or statements to law enforcement, in violation of 18 U.S.C. § 1001. Exhibit A. Under the section that set forth the basis for the search under Fed. R. Crim. P. 41(c), the following boxes were marked: (1) evidence of a crime; (2) contraband, fruits of crime, or other items illegally possessed; and (3) property designed for use, intended for use, or used in committing a crime. Id. The attached affidavit did not incorporate or reference any other document. The affidavit contained the above recited facts as well as seventeen paragraphs of information relating to the affiant's training and experience as a special agent with ICE regarding drug and contraband smuggling crimes. It also described the place to be searched:

> Location: 514 W. North Ave. Apt. #4, Pittsburgh, PA 15212 is described as a (3) story red brick multi-unit structure containing 6 individual apartments. Apartment # 4 is located on the second floor rear of the building, the door is marked # 4.

Affidavit of Martin Ryan, Exhibit B at ¶ 35.

Magistrate Judge Amy Reynolds Hay issued the warrant on the same day.  The warrant itself contained an attachment ("Attachment A"), which contained 12 paragraphs of items for which authorization to search was granted.  Among the items listed were:

> "(f): items of personal property that tend to identify the persons in residence . . . ; (k): controlled substances, to include heroin . . .  ; (l): Resident alien identification cards, passports, and VISA's of the people mentioned in the Affidavit."

Attachment A to Exhibit A.  The search of the North Avenue apartment led to the seizure of a scale, heroin residue, twelve cellular telephones, miscellaneous documents, cash, and a computer.

Defendant objects only to the search of the North Avenue apartment.  He brings his motion to suppress on the ground that the warrant which authorized the search was not supported by a showing of probable cause that evidence of any criminal activity would be found there.  Additionally, the good faith exception to the exclusionary rule is inapplicable because the affidavit underlying the warrant is so lacking in probable cause that official reliance on it objectively is unreasonable.

The government argues that the magistrate judge had a substantial basis to believe that defendant's North Avenue apartment would contain evidence of the alleged crimes.  First, the affidavit set forth probable cause to believe that his apartment would contain evidence of drug-trafficking activities.  Second, the affidavit also provided probable cause to believe that defendant was not in possession of his immigration papers, that he provided false information to law enforcement officers about his actual residence and that evidence of those offenses would be

located at the North Avenue apartment. Finally, defendant purportedly lacks standing to object to the search of the apartment.[2]

Consideration of all the facts and information submitted to the magistrate judge as well as the permissible inferences drawn therefrom provided a substantial basis for the magistrate judge's finding of probable cause to search defendant's North Avenue apartment. Accordingly, defendant's motion to suppress must be denied.

It is well-established that the role of a reviewing court in analyzing a magistrate judge's initial probable cause determination is to assess whether the magistrate judge had a substantial basis for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 238 (1983). The United States Court of Appeals for the Third Circuit has explained that "[reviewing courts] are constrained to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made" and must refrain from engaging in *de novo* review as to whether probable cause actually existed. United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993) (recognizing that reviewing courts must refrain from making their own assessment as to probable cause). If a substantial basis for the magistrate judge's determination exists, then that finding must be upheld notwithstanding the fact that "a different magistrate judge might have found the affidavit insufficient to support a warrant." United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993).

A magistrate judge's finding of probable cause "should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419). This is not to say, however, that reviewing courts should simply "rubber stamp a magistrate's

---

[2] The issue of standing was resolved at the suppression hearing when it was determined that defendant's name on the lease established a possessory interest in the apartment which was sufficient to create standing.

conclusions." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000). Case law makes clear that this deferential standard urges that "the resolution of doubtful or marginal cases in this area [ ] be largely determined by the preference to be accorded to warrants." Jones, 994 F.2d at 1055 (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)); see also United States v. Stearn, 597 F.3d 540 (2009) (acknowledging the Supreme Court's direction that cases which present close calls should be resolved in favor of upholding the warrant) (citing Gates, 462 U.S. at 237 n.10).

In assessing whether probable cause exists, an issuing magistrate judge must "make a practical, common-sense decision" that there is a "fair probability that . . . evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. The Supreme Court has described probable cause as a "fluid concept-turning on the assessment of probabilities in particular factual contexts." Id. at 232. Probable cause does not require direct evidence linking the crime with the place to be searched. Stearn, 597 F.3d at 554 (opining that while it would be ideal for every affidavit to contain direct evidence, a magistrate may issue a search warrant without it). Courts have recognized that probable cause "can be, and often is, inferred from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and [the] normal inferences about where a criminal might hide [evidence].'" Id. at 554 (citing Jones, 994 F.2d at 1056 (quoting United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985)).

When analyzing the existence of probable cause, the focus must be on "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Gates, 462 U.S. at 231 (probable cause is a "practical, nontechnical conception"). The magistrate judge must use common-sense and read the supporting affidavit in its entirety. Conley, 4 F.3d at 1206 ("[S]tatements in an affidavit may not be read in isolation-

the affidavit must be read as a whole.").  An issuing magistrate judge is permitted to make

reasonable inferences from the information in the warrant application.  United States v. Loy, 191

F.3d 360, 366 (3d Cir. 1999) ("In making the probable cause determination, the issuing

magistrate may draw reasonable inferences from the material provided in the warrant

application.") (quoting United States v. Rowland, 145 F.3d 1194, 1205 (10th Cir. 1998)).  The

magistrate judge also is entitled to give "considerable weight to the conclusions of law

enforcement officers with regard to where evidence of a crime is likely to be found . . . ."

Whitner, 219 F.3d at 296 (quoting United States v. Caicedo, 85 F.3d 1184, 1192 (6th Cir. 1996).

       When the crime under investigation is drug distribution, the Third Circuit has recognized

that "evidence associated with drug dealing needs to be stored somewhere, and . . . a dealer will

have the opportunity to conceal it in his home."  Stearn, 597 F.3d at 558 (quoting Whitner, 219

F.3d at 298).  A number of courts have inferred that "a dealer could logically conclude that his

residence is the best, and probably the only, location to store items such as records[,] . . . cash, . .

. guns, . . . and large quantities of drugs to be sold."  Id. at 558 (quoting Whitner, 219 F.3d. at

298); see also United States v. Burton, 288 F.3d 91, 104 (3d Cir. 2002) ("[I]t is a reasonable

inference to conclude that drug dealers often store evidence of drug crimes in their

residences[.]"); United States v. Hodge, 246 F.3d 301, 306 (3d Cir. 2001) ("It is reasonable to

infer that a person involved in drug dealing on such a scale would store evidence of that dealing

at his home.").  The Burton court limited application of the Whitner-Hodge inference to

situations where there is "evidence supporting three preliminary premises: (1) that the person

suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed

by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the

dealer's activities."  Burton, 288 F.3d at 104.  This is not to say, however, that a magistrate may

infer probable cause to search a defendant's residence solely from evidence suggesting that the defendant is a drug dealer. Id. (discussing that there must be some evidence that links contraband in the home to the drug dealer's activities) (emphasis added). The Burton court recognized that the search of a drug dealer's home would be unreasonable if the affidavit suggested no reason to believe contraband would be found there. Id.; see also Stearn, 597 F.3d at 560 (affidavit must establish nexus between dealer's home and the crime under investigation).

Here, defendant's central contention is that there was insufficient evidence to support a nexus between the activities leading to his arrest and his North Avenue apartment. Defendant asserts that there was no basis to believe that he had engaged in or conducted any unlawful activity at the apartment and what was presented in the affidavit was insufficient to permit a finding that probable cause existed to believe that contraband or other evidence of the referenced criminal activity would be found there. In other words, defendant essentially maintains that the Burton factors cannot be satisfied.

Defendant's position is unavailing. While the affidavit accompanying the application for the search warrant of the North Avenue apartment provided only information that inferentially suggested defendant was involved in drug-trafficking activity, the affidavit submitted with the first search warrant arose from the same investigation, was presented to the same magistrate judge and contained facts which directly established that defendant was engaged in such activities. And the information contained in both affidavits, taken as a whole and in combination with the permissible inferences drawn therefrom, established a "substantial basis" for the

magistrate judge's finding of probable cause that drug-trafficking evidence would be found at defendant's North Avenue apartment.[3]

The first affidavit was presented to Magistrate Judge Amy Reynolds Hay on January 5, 2010, at 8:40 a.m. and sought authorization to place a global positioning device in a package. See In the Matter of the Search of Express Mail Parcel No. EM055084858IN, 2:10-mj-02. The affidavit accompanying that application informed the magistrate judge that United States Custom and Border Protection Officer Sapozhnikov had intercepted the referenced express mail package, opened it, and found it to contain 246 grams of a tan powder secreted within a false bottom of a shirt box. The package was addressed to a "Jones Wilson" at 2655 Brighton Road, Apartment #3, Pittsburgh, PA 15212. The sender was identified as "Eric Kingsley" with an address in Naugher Vasai, India. The powder tested positive for heroin. A warrant was issued for placement of the global positioning devise as requested. See id.

Thirty-two hours later Special Agent Ryan applied for the warrant at issue. The application was presented to the same magistrate judge. See In the matter of the Search of 514 W. North Ave., Apartment #4, Pittsburgh, PA 15212, 2:10-mj-07. The affidavit accompanying the application specifically relayed that a USPIS inspector delivered the "suspect Express Mail

---

[3] The government argues that probable cause existed to search for evidence of three different offenses. Since there was a substantial basis for the magistrate judge's finding that evidence of drug-trafficking activity would likely be located at the apartment, it is unnecessary to reach a conclusion as to whether there was a substantial basis for the remaining two offenses. It must be noted, however, that while there appears to be some merit to the government's claim that evidence of the 18 U.S.C. § 1001 offense was likely to be found at the apartment, its argument that it had probable cause to find evidence of the 8 U.S.C. § 1304(e) offense is misguided. The crux of that offense is the failure to have alien registration papers in one's possession, making the fact that they may be located elsewhere irrelevant. The pertinent evidence of that crime is the fact that one does not have his papers on his person. This was conclusively established by defendant's admissions at the Brighton Road residence. The officers did not need to locate the papers before they could charge and prove the offense of failing to carry the papers in his possession. Such reasoning is circular and unpersuasive.

Parcel EM055084858IN containing a quantity of heroin to 2655 Brighton Road, Apt. #3, Pittsburgh, PA, 15212," and that defendant was the only person at the apartment at the time of delivery. It further relayed that defendant took possession of the package upon delivery, opened it three minutes later, and was already in possession of the bag of heroin, having removed it from the secret compartment, when law enforcement officials from ICE, the USPIS, and the Pittsburgh Police entered.

There is ample authority for the proposition that review of the magistrate judge's probable cause determination cannot be myopically restricted to only the information presented in the second affidavit. Instead, all of the sworn statements relating to the same investigation that were placed before the issuing magistrate judge are to be considered. And when the affidavits are viewed as a whole, there is more than a sufficient basis to conclude that defendant was involved in an organized scheme to import and distribute an amount of narcotics that was consistent with large-scale drug-trafficking.

In United States v. Nolan, the United States Court of Appeals for the Sixth Circuit squarely confronted the issue of whether review of a magistrate judge's probable cause determination is confined to consideration of only those facts alleged in the affidavit accompanying the application or if multiple affidavits may be read together to support such a finding. 413 F.2d 850 (6th Cir. 1969). In Nolan, an agent filed two affidavits to obtain two search warrants, one for the defendant's room and the other for his car. The affidavit filed with the warrant to search the vehicle did not in itself establish probable cause. Facts in the separate affidavit cured the deficiency. The Sixth Circuit held that it was proper for the magistrate judge to consider all of the facts provided through both affidavits in determining whether probable cause existed as to each warrant. Id. at 853.

In support of its decision the <u>Nolan</u> court explained that the Fourth Amendment requires only that a probable cause finding be supported by sufficient facts presented under oath particularizing the place to be searched and the things to be seized. It recognized that the relevant inquiry is not whether the warrant made reference to both affidavits, but instead, whether the sworn facts were sufficient to support the magistrate judge's determination. It observed that the United States Court of Appeals for the Second Circuit had consistently held that a magistrate judge can consider all the information presented through the submission of multiple affidavits in making a probable cause determination as to any particular application. <u>Id.</u> at 853 (collecting cases). Given this authority and the lack of any controlling Supreme Court precedent, the court ruled that the magistrate judge's consideration of both affidavits in determining probable cause for any particular warrant was proper. <u>Id.</u> ("We believe that consistent with the Fourth Amendment the facts supplied [to] the [magistrate judge] by both affidavits could be taken into account by him in determining probable cause in relation to each.").

Other cases have followed these principles and permitted "probable cause to be determined from separate affidavits filed to obtain several warrants in the same criminal investigation." <u>State v. Smith</u>, 836 S.W.2d 137, 140 (Tenn. Crim. App. 1992). In <u>Smith</u>, two separate affidavits were simultaneously presented to a magistrate judge in support of two different warrants, one warrant authorizing the search of the defendant's residence and the other authorizing procurement of a blood sample. The court rejected the argument that the affidavit in support of the first warrant could not be used to determine whether probable cause existed for the second. It stated that "it would be hypertechnical for the [magistrate judge] not to act upon an entire picture disclosed to him in interrelated affidavits presented to him on the same day." <u>Id.</u>;

accord State v. Kalai, 537 P.2d 8, 10 (Haw. 1975) ("Where two closely related affidavits, referring to the same individual and the same criminal charge, are presented to the issuing magistrate simultaneously, he may consider both for the purpose of ascertaining the existence of probable cause."); United States v. Fogarty, 663 F.2d 928, 929-30 (9th Cir. 1981) (A magistrate judge is not required to read an affidavit with "tunnel vision" and thus is not limited to the four corners of a single affidavit where "facts are presented simultaneously in two related affidavits seeking two warrants.").

Similarly, these principles have been applied to scenarios where the affidavits were not presented simultaneously. In Kaiser v. Lief, the United States Court of Appeals for the Tenth Circuit held that a magistrate judge may rely on facts included in two separate affidavits presented a day apart. In upholding the search, the court recognized that while the two affidavits were not presented to the magistrate judge on the same day, "all of the information on which the magistrate relied was included in sworn documents." 874 F.2d 732, 735 (10th Cir. 1989). In United States v. Manufacturers National Bank of Detroit, Livernois-Lyndon Streets, Safety Deposit Box # 127, Detroit, Michigan, two separate affidavits were presented to a magistrate judge within a day of each other by an officer seeking warrants to search the defendant's residence and security deposit box. The Sixth Circuit held that the issuing magistrate judge was entitled to consider both affidavits in reaching a probable cause finding, and opined that it "would needlessly restrict the discretion of a magistrate to hold that two affidavits filed so close in time and referring to a single criminal investigation which was still continuing could not be considered together in determining whether to authorize a further search." 536 F.2d 699, 702 (6th Cir. 1976); accord United States v. Markis, 352 F.2d 860, 864 (2d Cir. 1965) (upholding magistrate judge's probable cause determination based on affidavits relating to the same person

and the same offense presented four days apart), vacated on other grounds, <u>Markis v. United States</u>, 387 U.S. 425 (1967); <u>Cf.</u> <u>Commonwealth of Massachusetts v. Saleh</u>, 486 N.E.2d 706, 709 (Mass. 1985) (observing in upholding probable cause determination based on two separate affidavits that "[e]ach affidavit contributes to the total picture from which the magistrate determines probable cause.").

Here, the two affidavits established that defendant was the recipient of a package originally containing 246 grams of heroin. The package had been shipped from overseas under common names that appeared to be aliases. It contained a shirt box with a secret compartment where the narcotics where hidden. Defendant accepted the package without hesitation. He immediately opened it upon its arrival and quickly removed the drugs from the hidden compartment. He admitted the package was intended for him even though it was addressed to "Jones Wilson" and by doing so acknowledged his involvement in the shipment of overseas packages through the use of fictitious addresses. These basic underlying facts provided a firm basis from which the magistrate judge could draw the inference that defendant was involved in an ongoing narcotics importation/distribution operation.

Moreover, the second affidavit as understood in the context established by the first affidavit contained salient facts that provided the magistrate judge with a substantial basis to find that there was probable cause to believe that additional evidence of the ongoing operation would be found in defendant's apartment. The affiant was an experienced law enforcement officer who has worked as a special agent with ICE for ten years. He had received training and performed duties with ICE relating to the investigation of contraband and drug smuggling. He was familiar with drug-trafficking practices, had executed a number of residential searches in connection with drug investigations, and was familiar with the types of drug-related evidence that are typically

recovered from the residences of drug-traffickers. As such, the magistrate judge was entitled to give substantial weight to Special Agent Ryan's conclusions that evidence of drug-trafficking would likely be found at defendant's North Avenue apartment. See Whitner, 219 F.2d at 296 ("The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found . . .") (quoting Caicedo, 85 F.3d at 1192) (quoting United States v. Lawson, 999 F.2d 985, 987 (6th Cir. 1993)).

The affidavit explained in detail the circumstances surrounding the controlled delivery of the package to the Brighton Road residence, which sufficiently supported the inference that defendant's true address was the North Avenue apartment and that evidence of the drug-importation/distribution operation was likely to be found there. The officers were notified that the package had been opened almost immediately after defendant took receipt of it. Upon entry they observed defendant carrying the plastic bag containing heroin. The inference properly was raised that defendant was aware of the secret compartment in the shirt box, and knew without hesitation how to access and remove its contents.

Moreover, defendant became visibly nervous when questioned about the package and said he was expecting it to contain shirts and pants from India. He claimed to have ordered the items using a 1-800 number, yet he could not recall anything about the number and did not have it written anywhere. He gave conflicting responses when asked if this was his first time receiving packages from India, initially stating that he previously had, then stating that this was his first time. Defendant admitted the package was for him but claimed that the clothing was a late Christmas gift for "someone else". When asked who the "someone else" was, he was unable

to provide a name, and then told the officers that he did not know who he had bought the items for but would give them to some of his Jitney customers.

The affidavit also recounted that defendant told the officers that he was in the business of selling used vehicles. The magistrate judge logically could have inferred that his "customers" would be individuals in the market for used cars, not clothing. Even more curious is that while defendant purported to earn his livelihood by selling used cars, the affidavit indicated that he was driving a rental vehicle. Courts have recognized that the use of rental vehicles is common in the drug trade because they are not subject to forfeiture. See Hodge, 246 F.3d at 306 (discussing how the use of a rental car is a common practice in the drug trade); United States v. $32, 310.00, 1988 WL 169271, at 7 (D.N.J. June 23, 1988) ("Evidence indicated that rental cars are often used to facilitate drug transactions since such cars are not subject to forfeiture."). The magistrate judge thus was entitled to recognize that defendant's use of a rental vehicle added to the quantum of information bearing on the issue of probable cause.

The affidavit contained sufficient evidence to permit the magistrate judge to find probable cause to believe that the North Avenue apartment was the location of defendant's true residence. He was deceptive in his answers when the officers asked him about the apartment. When confronted with a piece of mail containing his name and the apartment address, he told the officers that his brother lived there. Although defendant claimed to live at the Brighton Road residence with his girlfriend for the past six months, the information gathered from the landlord and letter carrier directly contradicted his assertion and strongly suggested that the North Avenue apartment was his actual residence. His name was the only one on the lease. The landlord also indicated that defendant had told the rental agency that he used the North Avenue apartment as

an office and only let his brother stay on occasion. The officers then spoke with a letter carrier who told them that defendant was the only person who received mail at that address.

Defendant's omissions to the officers about the fact that the apartment was in his name and that he continued to receive mail there permitted the magistrate judge to draw an inference that defendant was attempting to disassociate himself from the North Avenue apartment. "This type of suspicious and deceptive response to questioning leads to a reasonable inference that [defendant] was attempting to conceal the existence of the [North Avenue] apartment and his association with it." Whitner, F.3d at 299. Further, defendant's suspicious and deceptive response regarding the apartment is considered "an important piece of evidence linking the crime to the [North Avenue] apartment." Id.

The affidavits also contained sufficient information from which the issuing magistrate judge was entitled to draw the reasonable inference that evidence of drug-trafficking was likely to be found at defendant's North Avenue apartment. See Caicedo, 85 F.3d at 1192 (A magistrate judge may draw reasonable inferences about where evidence is likely to be found based on the type of offense and the nature of the evidence sought). Although there is no direct evidence that drugs or information about the importation/distribution operation would be located at defendant's North Avenue apartment, direct evidence is not a prerequisite to a finding of probable cause. See Stearn, 597 F.3d at 554 (A warrant may be issued without direct evidence). The facts surrounding defendant's arrest suggested that he was an experienced drug dealer who was operating a large-scale drug distribution business. See Whitner, 219 F.3d at 298 (It was reasonable for a magistrate judge to infer that the defendant was involved in the drug trade where he was arrested pursuant to controlled delivery of a large quantity of drugs, the circumstances leading to his possession of those drugs were indicative of drug-trafficking activity, and

ammunition was found in his vehicle, which also was indicative of drug-trafficking.). The amount of heroin that defendant was seeking to import indicated that he was "involved in selling drugs, rather than merely using them." Id. Defendant drove a rental vehicle, notwithstanding the fact that he purported to be a used car salesman. The fact that he drove a rental car, which is a "common practice in the drug trade", indicated that the "anticipated transaction was not an isolated deal, but part of a larger business." Hodge, 246 F.3d at 306. Taken together, those facts entitled the magistrate judge to infer that defendant was an experienced drug dealer who would need to store evidence of his illegal activities somewhere. Whitner, 219 F.3d at 298.

Moreover, a number of courts have recognized that evidence of drug distribution is likely to be found where the dealer resides. Id. at 297-98 (collecting cases from other circuits); see United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999) (Although no drug-trafficking was observed to occur at the drug dealer's home, it was reasonable to infer that evidence of his dealing would be located there). This inference was bolstered by defendant's statement to his landlord that he used the small, one-bedroom efficiency apartment as an "office." Additionally, defendant's attempt to distance himself from his actual address also raised an inferential link between his illegal activities and the apartment, which the magistrate was permitted to draw. See Whitner, 219 F.3d at 299 (It was reasonable to infer that evidence of drug-trafficking would be found at the defendant's home where he was involved in drug dealing, and during questioning about his involvement he attempted to conceal his true address from the police.). In other words, defendant's efforts at concealing his real address permitted the magistrate judge to infer that "the reason for hiding [his] correct residence [was because] further evidence may be [found] at this location . . . ." Caicedo, 85 F.3d at 1193. Given these circumstances the magistrate judge was

permitted to draw the inference that defendant was a person involved in the drug trade and it was likely he would store evidence of that activity at his residence.

Further, the affidavit stated that defendant declined to accompany officers to the North Avenue apartment purportedly because he wanted to call his brother and warn him about the officers' visit so that his brother would not be angered. He had freely consented to a search of his rental vehicle and had otherwise complied with the arresting officers' requests up until they asked him to travel to the apartment. After cooperating with the officers as to all other matters, the effort to avoid going to the apartment permitted the magistrate judge to draw an inference that contraband or other evidence of drug-trafficking activity could be found there.

Finally, Special Agent Ryan was an experienced officer who believed it likely that defendant's home would contain evidence relating to his drug-trafficking activities and as such the magistrate judge was entitled to give "considerable weight" to his conclusions "regarding where evidence of [the] crime [was] likely to be found." Whitner, 219 F.3d at 296. The backdrop of defendant just having been arrested on conspiracy to distribute and importation charges pursuant to the controlled delivery of a package that had a secret compartment and had been shipped from India with the use of aliases made it even more likely that evidence of those crimes would be found at defendant's residence. See Jones, 994 F.2d at 1055-56 (While "probable cause to arrest does not automatically provide probable cause to search the arrestee's home," probable cause to arrest increases "the likelihood that [the arrestee's] residence contains evidence of the crime.").

The affidavits, read as a whole and in a practical, common-sense manner, demonstrated that an individual involved in drug-trafficking activity was attempting to conceal his address and disassociate himself with that location. This situation, combined with Special Agent Ryan's

opinion that evidence of drug dealing was likely to be found in defendant's North Avenue apartment, when coupled with the other circumstantial evidence suggesting defendant was involved in an ongoing importation and distribution scheme, provided a substantial basis from which the magistrate judge could conclude that evidence of defendant's drug-trafficking would be found in his apartment.

Admittedly, the link to defendant's apartment was not the strongest. But "doubtful or marginal cases in this area should be largely determined by the preference for warrants." Ventresca, 380 U.S. at 109. As the Third Circuit has explained:

> While [the officer writing the affidavit] might have been able to supply the magistrate judge with a stronger link to the defendant['s] residence[], the fact remains that he did bring the evidence to a magistrate judge, who determined that there was probable cause to issue the warrants. In reaching our conclusion, we are mindful that a 'grudging or negative attitude by reviewing courts towards warrants' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.

Jones, 994 F.2d at 1057 (quoting Ventresca, 380 U.S. at 108). Here, Special Agent Ryan brought the amassed evidence to a magistrate judge who in turn found probable cause to issue the warrant. The sworn statements as a whole provided a substantial basis for the magistrate judge to make a reasonable finding that probable cause existed to support the warrant to search defendant's apartment. Consequently, the warrant must be upheld even though we might have been inclined to reach a contrary result.

Even assuming for the sake of argument that no substantial basis existed for the magistrate judge's probable cause determination, the evidence obtained would nevertheless be admissible under the good faith exception to the exclusionary rule established in United States v. Leon, 468 U.S. 897 (1984). Under the good faith exception, suppression of evidence is

"inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." United States v. Williams, 3 F.3d 69, 74 (3d Cir. 1993).

"The test for whether the good faith exception applies is whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization." Loy, 191 F.3d at 367 (quoting Leon, 468 U.S. at 922 n. 23). While the mere existence of a warrant is typically enough to prove that an officer conducted a search in good faith, Leon, 468 U.S. at 922, the Third Circuit has recognized certain situations where an officer's reliance on a warrant nevertheless would be unreasonable and would not trigger the good faith exception:

> (1) [when] the magistrate [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit;
> (2) [when] the magistrate [judge] abandoned his judicial role and failed to perform his neutral and detached function;
> (3) [when] the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
> (4) [when] the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

Hodge, 246 F.3d 301 (internal quotations and citations omitted).

Defendant maintains that the affidavit not only failed to establish the requisite nexus to his apartment, but it was so lacking in probable cause that official belief in its legality was entirely unreasonable. In order to trigger the third exception, defendant must not only show that "the magistrate erred in issuing the warrant, but that this error was so obvious that a law enforcement officer, without legal training, should have realized upon reading the warrant, that it was invalid and should thus have declined to execute it." United States v. 92,422.57, 307 F.3d 137, 146 (3d Cir. 2002).

As previously discussed, the affidavit fell far short of being "a 'bare bones' document" that did not contain sufficient indicia to support the magistrate judge's finding of probable cause.

Compare Loy, 191 F.3d at 369 (finding "bare bones" affidavit that contained only the affiant's conclusory statement that individuals who collect child pornography commonly keep it in their homes insufficient to support anticipatory warrant where there was no evidence that the defendant ever took child pornography to his residence and he had indicated that he kept such items in a storage locker). At the very least, the affidavit "presented a close call" and was not so clearly lacking in probable cause as to render official belief in its legality "entirely unreasonable." Hodge, 246 F.3d at 309. In close call situations where a magistrate judge has made his or her call, official reliance on the warrant's validity objectively is reasonable. Id. at 309; see also Williams, 3 F.3d at 74 (officers should be able to rely on a magistrate judge's determination in close-call situations). As amply set forth above, the affidavit was not so clearly lacking in probable cause that no reasonable police officer objectively could believe that, despite the magistrate judge's authorization, the law prohibited a search of defendant's residence for the listed evidence. See Zimmerman, 277 F.3d 426, 438 (3d Cir. 2002). Thus, the good faith exception would apply and the evidence seized during the search of defendant's North Avenue apartment is not subject to suppression for this reason as well.[4]

---

[4] Defendant also maintains that the affidavit and/or resulting warrant failed to satisfy the particularity clause because the affidavit did not identify the specific evidence that the affiant believed would be found in the North Avenue apartment. This contention is without merit. First, by operation of "attachment A" the warrant listed with specific particularity the items that were believed to be concealed in the apartment. See United States v. Tracey, 597 F.3d 140, 147 (3d Cir. 2010) ("[W]e have held that including the statement 'see Exhibit A sealed by Order of the Court' in the items-to-be-seized section of the warrant incorporated that exhibit containing a list of items to be seized. See Bartholomew [v. Commonwealth of Pennsylvania, 221 F.3d 425, 429 (3d Cir. 2000)] . . . Similarly, we held an affidavit was incorporated where the warrant 'direct[ed] the police officers to search the defendant's premises 'for ... evidence which is specified in the annexed affidavit.' United States v. Johnson, 690 F.2d [60, 64 n. 7 (3d Cir. 1982)]). Second, the affidavit contained seventeen paragraphs of the items that Special Agent Ryan's extensive experience had led him to believe would be concealed at defendant's North Avenue apartment. This satisfied any requirement that the affidavit delineate and establish a basis to search for the specific items listed in the warrant. See Whitner, supra, at 296.

In short, the affidavits contained sufficient information from which the magistrate judge could have found probable cause that evidence of defendant's drug-trafficking activities would be found at the North Avenue apartment.  Because the magistrate judge had a substantial basis for her probable cause finding, and because the officers' reliance on the warrant was objectively reasonable, the evidence seized during the search of defendant's home is not subject to suppression.  Accordingly, defendant's motion to suppress will be denied.

Date: December 14, 2010

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:     Ross E. Lenhardt, AUSA

        W. Penn Hackney, AFPD

        Akin Adepoju, Esquire

        Via: CM/ECF Electronic Filing